IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

BETH ANN QUARIO,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-3116

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION ................................................. 2

II.   PRINCIPLES OF REVIEW ....................................... 2

III.  FACTS ............................................................ 3
    A.   Quario's Education and Employment Background ............ 3
    B.   Vocational Expert's Testimony from Administrative
        Hearing Held on November 19, 2013 ........................ 4
    C.   Quario's Medical History ................................... 5

IV.  CONCLUSIONS OF LAW ........................................ 9
    A.   ALJ's Disability Determination ............................. 9
    B.   Objections Raised By Claimant ............................ 11
        1.   Dr. Lozano's Opinions ............................... 11
        2.   RFC Assessment and Hypothetical Question ............ 14

V.    CONCLUSION .................................................. 18

VI.  ORDER ......................................................... 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Beth Ann Quario on May 15, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Quario asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Quario requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On August 31, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

..." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Quario's Education and Employment Background

Quario was born in 1982. In school, she completed the eighth grade. While in school, she was enrolled in special education classes. She has no further schooling or

vocational training. In the past, Quario worked as a sandwich maker, fast food worker, and corn sorter.

### B. Vocational Expert's Testimony from Administrative Hearing Held on November 19, 2013

At the administrative hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who is limited to:

> performance of tasks that could be learned in 30 days or less, involving no more than simple, work related decisions, with only occasional work place changes, all requiring little or no judgment.
>
> This hypothetical individual should have no interaction with the public. This hypothetical individual should have no more than occasional interaction with coworkers or supervisors, and there should be no requirement to read instructions or write reports.

(Administrative Record at 48.) The vocational expert testified that under such limitations, Quario could perform her past work as a corn sorter and "some sandwich maker jobs." In the alternative, the vocational expert testified Quario could perform the following jobs in the national economy: (1) bagger, (2) folder, and (3) machine feeder. The ALJ further questioned the vocational expert:

> Q: If we have a second hypothetical individual who starts with the same limitations as hypothetical individual number one, however the second hypothetical individual is absent from work three or more times a month, are there jobs in the national economy that hypothetical individual number two can perform?
>
> A: No. It's been my experience that would not be tolerated. There'd be no work on a full-time competitive basis.
>
> Q: And then if we again start with the limitations that I've previously given you for hypothetical individual number one, however we add in addition to those limitations that hypothetical individual number three is unable to

4

> sustain the necessary stamina to complete a full eight-hour workday, five days a week, 40 hours a week, without frequent rest periods and/or unscheduled breaks that would occur on a daily basis, are there jobs in the national economy that hypothetical individual number three can perform?
>
> A: No. There'd be no work on a full-time competitive basis.

(Administrative Record at 49.)

### C. Quario's Medical History

On October 19, 2010, Quario self-referred to the Berryhill Center for Mental Health in Fort Dodge, Iowa.[2] Quario met with Patricia T. Hull, LISW, and reported that she "does not like her life very much right now."[3] She also reported feeling "stuck, depressed, worthless, hopeless and . . . irritable."[4] Quario denied any memory, attention, or concentration problems. Hull diagnosed Quario with major depression, and assessed a GAF score of 52. Quario agreed to therapy only as a treatment option.

On November 10, 2010, Quario was admitted to the Mary Greeley Medical Center in Ames, Iowa, for observation associated with suicidal thoughts. Quario stated that she planned to take an overdose of pills and drive into traffic. Her medical providers noted Quario attended mental health therapy every week or two at the Berryhill Center. She "elected to participate in therapy rather than use medication in addition [to therapy]."[5] During her hospital course, Quario was started on Prozac. She was discharged on November 15, 2010, feeling "cheerful" and "upbeat." Her discharge diagnoses were

---

[2] Quario's initial evaluation at the Berryhill Center occurred on October 19, 2010, and was completed on October 25, 2010.

[3] Administrative Record at 334.

[4] Administrative Record at 334.

[5] *Id.* at 293.

5

major depression and Cluster B personality disorder characteristics. Quario was encouraged to continue her therapy sessions at the Berryhill Center, and also directed to begin medication management as treatment.

On November 19, 2010, Quario was referred to Marilyn Paplow, ARNP, for medication management. Upon examination, Paplow diagnosed Quario with major depressive disorder and anxiety disorder. Paplow assessed Quario's GAF score at 50. Paplow identified the following problems for Quario: major depression, anxiety, excessive worrying, poor self-esteem, insomnia, financial stress, and relationship issues. Paplow opined that Quario "is intelligent and has maintained care of her children in spite of difficulties with behavioral issues of the oldest child[.]"[6] Paplow recommended medication and continued therapy as treatment.

On March 28, 2011, Quario met with Mike Corsberg, PA, for a mental health evaluation. In reviewing Quario's medical history, Corsberg noted that she was started on Prozac in October 2010. Corsberg indicated that since she started medication, she has been "relatively stable." Upon examination, Corsberg diagnosed Quario with major depression and anxiety disorder. Corsberg also wanted to rule out a possible personality disorder. Corsberg assessed her GAF score at 50. Corsberg recommended medication as treatment.[7]

On January 30, 2012, Quario's care was transferred from Corsberg to Dr. Maria Lozano, M.D. In her initial evaluation, Dr. Lozano reviewed Quario's current condition:

> [Quario] continues to endorse chronic depressive symptomatology, she feels everything is an effort for her, she feels there is no clear reason to keep going on, she feels very

---

[6] *Id.* at 329.

[7] The record indicates that Quario ceased going to psychotherapy in December 2010, and did not start therapy again until after August 2013, despite encouragement to do so.

> anxious, sad but she is unable to cry since she was a teenager. She describes being lonely and not having any close relationships, the relationship with her partner is a chronic stressor and she feels there is no interest on his part to get to know who she is and how she feels. Sometimes she feels compelled to start fights just to "feel something," she also reports that within the past 2 years she has started to experience "anxiety attacks," this come[s] up a few times per week both when at home and especially when she is in grocery stores which had never been a pleasant experience for her. These last about 5-10 minutes, accompanied by all of the vegetative symptoms of a panic attack.

(Administrative Record at 311-12.) Upon examination, Dr. Lozano diagnosed Quario with major depressive disorder, panic disorder, and personality disorder. Dr. Lozano assessed Quario's GAF score at 55. Dr. Lozano recommended medication and psychotherapy as treatment.

On July 6, 2012, Dr. Sandra Davis, Ph.D., reviewed Quario's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Quario. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Quario with affective disorders, anxiety disorder, and personality disorder. Dr. Davis determined Quario had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis found Quario was moderately limited in her ability to: interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Davis concluded:

> In summary, [Quario] has motivational problems and avoids leaving her home. . . . [T]here do not appear to be cognitive limitations for work beyond difficulty reading written

7

> instructions. . . . She should be capable of understanding simple and some detailed instructions, as long as they are presented in spoken form. She may have a negative attitude towards authority and would be uncomfortable dealing with large numbers of people in the general public.

(Administrative Record at 63.)

On June 21, 2013, at the request of Quario's attorney, Dr. Lozano filled out a "Mental Residual Functional Capacity Questionnaire" for Quario. Dr. Lozano diagnosed Quario with panic disorder with agoraphobia, recurrent major depression, borderline personality disorder, and reading disability. Dr. Lozano noted Quario "continues to ha[ve] significant symptomatology despite being compliant with treatment."[8] Dr. Lozano found Quario's prognosis to be "poor" and "limited." Dr. Lozano identified the following signs and symptoms for Quario: decreased energy, thoughts of suicide, generalized persistent anxiety, mood disturbance, emotional withdrawal and isolation, intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional lability, sleep disturbance, and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once per week. Dr. Lozano determined Quario was unable to meet competitive standards in the following areas: maintaining attention for two-hour segments, performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in a routine work setting, dealing with normal work stress, dealing with stress of semi-skilled and skilled work, interacting appropriately with the general public, and using public transportation. Dr. Lozano also determined Quario was seriously limited, but not precluded from the ability to: remember work-like procedures, carry out short and simple instructions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without

---

[8] Administrative Record at 340.

unduly distracting them or exhibiting behavioral extremes, be aware of normal hazards and take appropriate precautions, carry out detailed instructions, set realistic goals or make plans independently of others, maintain socially appropriate behavior, and travel in unfamiliar places. Dr. Lozano opined that Quario's "severe symptoms of anxiety, panic and agoraphobia, mood disturbance, and impulsive behavior [are] triggered by social interactions."[9] Lastly, Dr. Lozano estimated Quario would miss more than four days of work per month due to her impairments or treatment for her impairments.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Quario is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ

---

[9] Administrative Record at 343.

9

> determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Quario had not engaged in substantial gainful activity since January 1, 2010. At the second step, the ALJ concluded from the medical evidence that Quario had the following severe impairments: depressive disorder, anxiety disorder, and borderline personality disorder. At the third

step, the ALJ found that Quario did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Quario's RFC as follows:

> [Quario] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: tasks that can be learned in less than 30 days involving no more than simple work-related decisions with only occasional work place changes requiring little or no judgment. She can perform work that require[s] no interaction with the public, and only occasional interaction with co-workers and supervisors. She can perform work that does not require her to read instructions or write reports.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Quario is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Quario could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Quario was not disabled.

### B. Objections Raised By Claimant

Quario argues the ALJ erred in two respects. First, Quario argues the ALJ erred by failing to properly consider the opinions of Dr. Lozano. Second, Quario argues the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed because they are not supported by substantial evidence and do not properly set forth her credible functional limitations.

#### 1. Dr. Lozano's Opinions

Quario argues the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Lozano. Specifically, Quario argues the ALJ failed to properly weigh Dr. Lozano's opinions. Quario also argues the ALJ failed to give "good" reasons for discounting Dr. Lozano's opinions. Quario concludes this matter should be remanded for further consideration of Dr. Lozano's opinions.

11

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the

government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

The ALJ addressed Dr. Lozano's opinions as follows:

> Maria Lozano, M.D., submitted a medical statement dated June 21, 2013 (Exhibit 5F). In her statement, she opined that [Quario] had several extreme limitations in her mental health functioning and she would miss more than four days of work each month. The undersigned has considered this opinion but affords minimal weight for the following reasons. It is inconsistent with the evidence that shows she is capable of engag[ing] in numerous daily activities including caring for her daughter and completing household chores, as this shows she is able to complete tasks and have some social interaction. Notably, this opinion is in direct opposition to a statement contained within her treatment notes. Dr. Lozano signed off on a treatment noted from March 2013 that stated "I do not really think she is disabled at this time" (Exhibit 6F, p.21). This statement clearly does not support this opinion. Furthermore, this opinion is not supported by the fact that Dr. Lozano never noted any significant deficits in [Quario's] mental functioning. As noted above, she did note some anxiety, but it has been noted that with proper treatment her anxiety has improved.

(Administrative Record at 18.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Lozano. The Court also finds that the ALJ provided "good reasons" for discounting Dr. Lozano's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the

13

conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. RFC Assessment and Hypothetical Question

Quario argues that both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed. Specifically, Quario argues the ALJ's RFC assessment and hypothetical questions to the vocational expert are incomplete because they do not properly account for all of her impairments and functional limitations. Thus, Quario contends the ALJ's RFC assessment and hypothetical questions are not supported by substantial evidence in the record. Quario maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record, and to allow the ALJ to provide the vocational expert with a proper and complete hypothetical question.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In her decision, the ALJ determined that:

> Overall, the record shows that [Quario] consistently has some moderate limitations imposed by her mental health impairments. At times, she has exacerbations of her symptoms that require short inpatient treatment. However, her exacerbations are short and she has always been stabilized quickly. The evidence indicates that she should be able to perform the above residual functional capacity.

(Administrative Record at 18.) Furthermore, in determining Quario's RFC, the ALJ thoroughly addressed and considered Quario's medical history and treatment for her complaints.[10] For example, the ALJ thoroughly discussed Quario's participation in treatment, and noted she consistently sought medication management, but against recommendations from various treating medical sources, she only participated sporadically in psychotherapy.[11] The ALJ also thoroughly reviewed Quario's mental status examinations for medication management and noted "[t]he mental status examinations from her medication providers are not supportive of her allegations that her mental health impairments are disabling."[12] Additionally, the ALJ found that Quario's medications were effective in controlling her symptoms.[13] Furthermore, the ALJ addressed Quario's testimony that she had difficulty leaving her home. The ALJ concluded "[w]hile she may have some difficulty leaving her home at times, there is no indication that she cannot leave when necessary. The undersigned has limited her social interaction to accommodate her difficulty in this area."[14] Finally, the ALJ properly considered and thoroughly discussed

---

[10] *See* Administrative Record at 15-18 (providing a thorough discussion of Quario's overall medical history and treatment).

[11] *Id.* at 16 ("The fact that she did not fully utilize all available treatment is not supportive of her allegations that her mental health impairments are disabling. If she was as limited as she has alleged, it seems she would have sought additional treatment.").

[12] Administrative Record at 16; *see also id.* at 16-17 (providing a thorough discussion of Quario's treatment history).

[13] *Id.* at 17 ("The fact that her symptoms are controlled with medications detracts from her allegation that her mental impairments are disabling.").

[14] *Id.*

Quario's subjective allegations of disability in making her overall disability determination, including determining Quario's RFC.[15]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Quario's medical records, observations of treating physicians, and Quario's own description of her limitations in making the ALJ's RFC assessment for Quario.[16] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Quario's assertion that the ALJ's RFC assessment is flawed is without merit.

Similarly, having reviewed the entire record, the Court, again, finds that the ALJ thoroughly considered and discussed both the medical evidence and Quario's testimony in determining Quario's impairments and functional limitations.[17] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially

---

[15] *Id.* at 15-19 (providing a thorough discussion of Quario's subjective allegations of disability); *see also id.* at 18 ("The record shows that [Quario] is able to engage in numerous activities of daily living. She is able to cook and clean. She can care for her personal hygiene. She is able to provide care for her daughter. Notably, at several points in the record it indicates she is a stay at home mother. Overall, [Quario's] description of her daily activities are essentially normal. . . . [S]he is more active than one would expect if all of her allegations were credible.").

[16] *Id.* at 15-19 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

[17] *See* Administrative Record at 15-19.

supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinions of Dr. Lozano. The Court also finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Lastly, the ALJ's hypothetical questions to the vocational expert were sufficient because they properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 11th day of January, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA